BREAUX, C. J.
The action was for damages in an amount over $20,000.
Plaintiff was thrown from his wagon about 3 o’clock in the afternoon on the 30th of January, 1911. He was driving his horse in a slow trot down Camp street toward Canal street. The car of the defendant company was running in the same direction. When the car was about 20 feet from the wagon, plaintiff left the track on which he was driving and turned - to the right. The wheels of his wagon fitted the track of the car. The car hit the wagon, threw plaintiff to the ground; his head falling near the curbing. The horse became frightened and ran against a telegraph pole and broke loose from the badly damaged wagon and ran off.
Plaintiff is an elderly man and has been driving his wagon fur a number of years.
The place of the collision was on Camp street about 100 feet south of Second street. The street is not wide, less than 50 feet. The rails are about 5 feet, 2% inches. The width of the ear is 8 feet, 4 inches. The projection of the step from the body of the car is about 2y2 inches. The depth of the platform is 4 feet, 10 inches. Its weight, 31,500 pounds. The measure of the street, and the size and weight of the car, is given above in order to add that, because of the narrow street and the weight of the car, care should be taken when wagons and cars are crossing each other or running along parallel lines.
Plaintiff had come from Sixth street, and drove onto the track on Camp street. At the moment that he drove into Camp there were no wagons or cars on the street. After crossing Second street, he heard the car bell. He turned to the right. Soon after the car hit the wagon. He was dashed to the ground; lost his senses.
Plaintiff testified in the case, and in answer to the question, “Was your wagon straightening out?” he said, “No; of course, I turned on the track, and I must have been cater-cornered.” The hind wheel was just out of the track, and his horse continued trotting. The seat of the wagon in front, on which plaintiff was seated, was about four feet from the ground. He was badly hurt, and suffered for some time great pain, from which he has not yet recovered.
Mr. Gayle Aiken, a witness for plaintiff, testified: That the street where the accident occurred is not very broad. That a driver should be careful; he must keep a lookout at the head of the car. That he passed cars frequently, but always kept an eye on them. He did not have a direct view of the accident. He came on the scene immediately afterward; saw plaintiff on the ground near the curb.
Mr. Frank Parley, an employé of the Standard Paper Company, another witness for plaintiff, testified that he was a passenger in the car sitting on the third seat on the right-hand side. He heard the motorman’s, bell as the car was advancing on the wagon, both moving in the same direction; *17 it drew his attention. Looking up, he saw the plaintiff turning off the track. He did not see. the car hit the wagon. He inferred, we take 'it, that the two, the ear and the wagon, collided a few feet from the front of the car. This conveys 'the idea that the wagon had already turned from the track and was on that part of the street between the car and the curb.
Another of plaintiff’s witnesses was Kennedy, a colored man, at work washing winaowpanes at the residence of the late Judge Eenner near by. He in the first place testified that the wagon had passed the front part of the car; afterward he changed his statement as a witness, and said that the car hit the wagon while the wagon was in front. He insisted, after some contradiction, that the wagon was hit while in front.
Another witness, Farlow, testified, as Kennedy had: That he saw a wagon turning out of the track and that while turning off the front part of the car it struck the back part of the wagon; threw it off. He said that he was not certain whether the wagon was struck 'by the steps or the dashboard. . That the impact broke the shafts of the wagon.
Another of plaintiff’s witnesses, Clarence Cooper, said that there was ample room for a wagon to pass between the car and the curb by driving the wheels of the wagon in the ditch along the curb.
The foregoing is, in the main, the testimony of the witnesses before named.
The issues are mainly of facts, and the question, as we appreciate the facts, is whether the wagon was struck by the car in front or in the rear. If it was struck in front, there is liability. If in the rear of the car, in our opinion, there is not.
We will as briefly as possible review the evidence of the witnesses for defendant.
A witness upon whom defendant places a great reliance is Reverend Mr. Daul, who was a passenger on the car. He said that he saw the wagon when the car passed it, and that he had already passed when the wagon was struck, referring to himself as a passenger in the car. If it be as he stated, it follows inevitably that the impact between the car and the wagon was not in front, as he was seated in the rear end of the car on the right-hand side, the side on which the accident happened.
“It must have been struck by the rear steps of the cars,” said the witness. “When I passed the wagon, no collision had taken place. It was only afterward.”
He said that he felt the shock of the impact after the wagon had passed, and therefore, according to this testimony, the wagon was struck near the rear end.
William Hanafy, motorman on the car, who had left the employ of the defendant company and was a member of the fire department when the case was tried, said: That he rang the bell. The horse and wagon turned as before stated. That the driver of the wagon must have pulled too'near to the car and struck its hind step. That plaintiff and his wagon had passed the front end of the car. His horse became unmanageable, and he immediately stopped. According to all the testimony, there was no delay in stopping the ear.
It was stopped at once. This witness, Hanafy, adds that there was a distance of about a foot or 18 inches between the car and wagon after it had left the track, and plaintiff was continuing on his road between the sidewalk curb and the ear. 1-Ie said, also, that he knew nothing of the accident at the moment it occurred; he had stopped the car because he saw the horse running off, and because of the different bells which the conductor had sounded. Plaintiff had passed the front of the car, and he thought nearly all the car had passed when the accident occurred. He also states that he had his power off, and had his car under full control when the wagon pulled off the track. *19 He was certain, he said, that, while the car was running, the wheels of the wagon were clear enough to allow the front step of the car to pass without touching the wagon; that his car was about 25 feet from the wagon when it turned. The car was running at five points, as we understand, at half speed, and the horse continued slowly trotting on the street.
Murphy, a motorman, who was riding as a passenger on the car, but who was on the front platform with the motorman, testified that the car was going down at half speed, and that when it reached Second street the motorman rang his gong, and that about 14 feet from the wagon it turned; that the motorman looked to the side and saw that the wagon had passed entirely to the street. The testimony of this witness is about the same as that of the motorman of the car.
August Richard, a conductor on the. Coliseum line, and of this particular car, was on the rear end of the platform. He testified: That he saw the rear-end step of the car strike the front hub of the front wheel of the wagon. That the driver pulled too near the car. He saw the wagon at about 1% feet from the car step. That the front part of the rear step struck the wagon, and that shortly thereafter the car was stopped in answer to the conductor’s three bells to stop instantly. The car is of the same width in front as it is in the rear.
It is well known the motorman does not turn the car at the terminal point; he only shifts his position and his controller, and the rear end on the front becomes the front end. If the wagon had not turned after it cleared the front of the car, it would not have hit the rear end. There must, in the nature of things, have been a turn of the wagon; and, if there was, the defendant cannot be held liable. It devolved upon the driver of the wagon to be careful not to make a turn at that particular time and drive the wagon in a cater-cornered direction.
[1] The evidence informs us that the motorman had looked back to see if the wagon was clear of the car. This was all he could do. It would not have L u proper for him to keep his eyes on the wagon if it had already passed and was some distance from the front of the car; he had other duties to perform. It devolved upon him to give the tracks and street ahead attention enabling him to know the condition and avoid injury. He must, to a reasonable extent, have an eye to the street in front after the vehicle is cleared in front and is being passed at a reasonable rate of speed. He is not required to follow it with his eyes until it has passed entirely, although it is his duty to look back if there is the least cause. In this instance, it does not appear that there was cause to look back at the moment of the collision. As we understand the situation, there would have been no accident if plaintiff had driven to the ditch and had continued near the curb on the pavement side of the street. The street car has the superior right of way, but it is not an exclusive right. But the vehicle must observe due care not to turn too suddenly in running along a side of a car. The driver ought not to place himself in a position of danger. If necessary to avoid an accident, he may drive into the gutter if that be practical.
The real fact is that the witnesses for plaintiff do not agree in their testimony. One states that the motorman was at fault by reason of the fact that he struck the wagon while it was in front of the car; another, that it was one or two feet on the side of the car. It follows that it had already left the tracks. Neither do the witnesses for the defendant agree except as to the one fact — that the wagon was at the rear end at the moment of the accident.
This is the whole case. It was incumbent *21 upon plaintiff to prove that the collision took place in front of the car, or near the front.
We have not found it possible to get away from the proposition that plaintiff’s wagon must have turned at the rear end of the ear sufficiently to come in contact with the car, and that that is the way the accident happened.
Before concluding, • we notice that plaintiff complains of the insufficiency of the charge of the district judge. He urged, through learned counsel, that it did not cover all of the points of the case; that the court left certain points of the law which should have been explained to the jury unexplained. We notice that the charge was given in the usual form of such charges, and contains the general instructions usually given. It may not have been as full and complete as it should have been in regard to the law. Plaintiff reguested no special instructions which were not given. We have not found that there was prejudicial error in declining to give the charge reguested.
[2] There was, however, one instruction properly given. The learned counsel asked the judge to charge the jury that in actions for personal injuries the burden is on the defendant to show- that plaintiff wás guilty of contributory negligence, citing Buechner v. N. O., 112 La. 599, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455.
The court gave this instruction in full.
As to the others, the court said that he charged in addition that that part of the decisions of this court which counsel read to the jury (and we infer from his statement that it included a number of decisions) was the law of the state, and applied particularly to this case. Owing to the number of personal injury cases that this court has had to decide, the principle of decisions was not wanting. We have no doubt from this statement that all the points were covered by decisions in regard to which the judge said to the jury that they were correct law and were pertinent to the case.
[3] In conclusion, we will state that the onus of proof was on plaintiff; that the verdict must be taken as correct until it is proven erroneous; that the judge gave his approval to the verdict. The jury and the judge heard the witnesses, and after hearing they decided on which side was the preponderance of proof.
We have given careful consideration to the ease, and are unable to conclude that the jury and the judge erred. Prom our point of view, it is not possible to grant relief to plaintiff, although it is unfortunate for him that he has met with the accident of which he complains.
Por reasons stated, the judgment is affirmed.